STATE OF NEBRASKA, APPELLEE, V.
CHARLES E. KAYS, APPELLANT.
___ N.W.2d ___

Filed October 17, 2014.    No. S-11-504.

1. **Courts: Appeal and Error.** Appellate review is limited to those errors specifically assigned in an appeal to the district court and again assigned as error in an appeal to the higher appellate court.

2. **Appeal and Error.** Although an appellate court ordinarily considers only those errors assigned and discussed in briefs, an appellate court may, at its option, notice plain error.

3. ____. Plain error exists where there is error, plainly evident from the record but not complained of at trial, that prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process.

4. **Rules of the Supreme Court: Appeal and Error.** Absent plain error, the Supreme Court's review on a petition for further review is restricted to matters assigned and argued in the briefs.

5. ____: ____. Incorporating by reference the assignments of error and arguments made in one's appellate brief is not an appropriate way to set forth separately and concisely the assignments of error in a petition for further review. Nor is mere incorporation by reference an appropriate discussion of the errors assigned as required by Neb. Ct. R. App. P. § 2-102(F)(3) (rev. 2012).

6. **Appeal and Error.** Absent plain error, an issue not raised to the district court will not be considered by an appellate court on appeal.

7. ____. A petition for further review cannot be utilized to circumvent the general rule that an appellant may not raise issues or arguments for the first time on appeal.

8. **Trial: Waiver: Appeal and Error.** One may not waive an error, gamble on a favorable result, and, upon obtaining an unfavorable result, assert the previously waived error.

9. **Rules of the Supreme Court: Trial: Judges: Appeal and Error.** It is not structural error for a hearing under Neb. Ct. R. App. P. § 2-105(B)(5) (rev. 2010) to be conducted by a judge who did not preside over the original trial.

10. **Records: Appeal and Error.** The reliability of the bill of exceptions on appeal is central to the integrity, reputation, and fairness of the judicial process.

11. **Rules of the Supreme Court: Records: Proof: Appeal and Error.** The burden of proof in a proceeding under Neb. Ct. R. App. P. § 2-105(B)(5) (rev. 2010) challenging the bill of exceptions is necessarily upon the party seeking the amendment.

12. **Courts: Records: Appeal and Error.** Under a plain error standard of review, it is not the role of an appellate court to substitute its opinion for the opinion of a district court that is reasonably supported by the record.

Petition for further review from the Court of Appeals, INBODY, Chief Judge, and IRWIN and MOORE, Judges, on appeal thereto from the District Court for Douglas County, LEIGH ANN RETELSDORF, Judge. Judgment of Court of Appeals affirmed.

Frank E. Robak, Sr., of Robak Law Office, for appellant.

Jon Bruning, Attorney General, and George R. Love for appellee.

WRIGHT, CONNOLLY, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.
NATURE OF CASE
The originally filed bill of exceptions prepared for this appeal indicated that the alternate 13th juror was polled in the verdict against the defendant. A reproofread version of the bill of exceptions that replaced the original bill of exceptions indicates that the alternate juror did not deliberate and was not polled. The question of the accuracy of the bill of exceptions was remanded for a hearing before the district court. The district court found that the reproofread version of the bill of exceptions was the bill of exceptions upon which the appeal should proceed. The court reporter testified at the hearing that the reproofread bill of exceptions accurately portrayed what occurred at trial. The 13th juror averred at the hearing that she did not deliberate and was not polled for the verdict. Subsequent to the order on remand, the defendant amended his brief on appeal to assign and argue that the bill of exceptions was not trustworthy in any respect and that, as a result, he was entitled to a new trial. The Nebraska Court of Appeals affirmed the district court's determination that the appeal should proceed upon the reproofread bill of exceptions and affirmed the defendant's convictions. On further review, we find no plain error in the district court's order determining that the presently filed bill of exceptions is accurate. We do not address any other assignments of error that were not

properly preserved, assigned, or argued in the petition for fur-
ther review.

## BACKGROUND

Charles E. Kays was convicted by a jury of one count of
first degree sexual assault of a child and two counts of third
degree sexual assault of a child. He was sentenced to 15 to 15
years' imprisonment on the conviction of first degree sexual
assault of a child and 20 months' to 5 years' imprisonment on
each of the remaining convictions.

Kays timely appealed to the Court of Appeals. He had dif-
ferent counsel on direct appeal than his trial counsel. Among
other things, Kays assigned as error that the district court failed
to select and discharge an alternate juror before submission of
the case to the jury and that the alternate 13th juror deliberated
and was polled in the guilty verdict against him. Trial coun-
sel did not object to the alleged alternate juror's deliberation
or move for a new trial on that basis, but appellate counsel
assigned and argued as error ineffective assistance of trial
counsel for failing to object to the 13th juror.

In preparing Kays' brief, appellate counsel had relied on
the most recent copy of the bill of exceptions that had been
e-mailed to him by the court reporter. That version reflected
the 13th juror's being polled. But the bill of exceptions filed
in the case reflected only 12 jurors polled for the verdict.
Neither version reflected that the district court had explicitly
discharged the 13th juror on the record.

When the court reporter became aware that appellate coun-
sel was arguing that the 13th juror deliberated in Kays' case,
she wrote to appellate counsel that she must have mistakenly
e-mailed him a prior version of the bill of exceptions that was
not adequately proofread. The court reporter explained that she
personally remembered that the 13th juror did not participate in
deliberation or polling. Further, she had checked the audiotape
to confirm that the 13th juror did not deliberate.

Kays filed an application with the Court of Appeals for
remand of the cause to the district court to correct the bill
of exceptions due to the discrepancies between the version
e-mailed to appellate counsel and the version on file. The

Court of Appeals granted the motion and remanded the matter to the district court for a hearing under Neb. Ct. R. App. P. § 2-105(B)(5) (rev. 2010).

Section 2-105(B)(5) states:

The parties in the case may amend the bill of exceptions by written agreement to be attached to the bill of exceptions at any time prior to the time the case is submitted to the Supreme Court. Proposed amendments not agreed to by all the parties to the case shall be heard and decided by the district court after such notice as the court shall direct. The order of the district court thereon shall be attached to the bill of exceptions prior to the time the case is submitted to the Supreme Court. Hearings with respect to proposed amendments to a bill of exceptions may be held at chambers anywhere in the state. If the judge shall have ceased to hold office, or shall be prevented by disability from holding the hearing, or shall be absent from the state, such proposed amendments shall be heard by the successor judge, or by another district judge in the district, or by a district judge in an adjoining judicial district.

The trial judge who tried the case against Kays recused herself due to a conflict of interest and reassigned the § 2-105(B)(5) hearing to another judge. Kays' appellate counsel did not object to the trial judge's recusal.

The court reporter who created the bill of exceptions testified at the § 2-105(B)(5) hearing. The court reporter testified that after preparing and filing the bill of exceptions, she received a letter from Kays' attorney asking her to correct some errors in the bill of exceptions and refile it. Those errors involved misidentification of the parties and numbering errors. The presence of the 13th juror during polling was not brought to her attention, and she was unaware that the original version of the bill of exceptions reflected 13 jurors' being polled.

The court reporter sent the bill of exceptions to have it reproofread. This process, she explained, involves listening to an audiotape of the proceedings. The court reporter entered onto her electronic copy all the corrections made by

the proofreader with red pen markings. The court reporter explained that she did this without paying particular attention to the substance of the changes.

The court reporter then printed the entire two-volume bill of exceptions with the new corrections and filed it, directing the clerk's office to backdate it to reflect the same date as the original bill of exceptions. The court reporter shredded the original bill of exceptions. She apparently did not personally retain any copy of the original bill of exceptions that was filed. However, the court reporter identified an e-mail attachment sent to Kays' appellate counsel as being identical to the originally filed bill of exceptions. That version showed 13 jurors polled in the verdict.

The court reporter testified that she had come to realize that shredding the original bill of exceptions and backdating the reproofread version was improper; however, she was not aware this was improper procedure at the time and she was not trying to hide anything. She explained that she thought she was following Kays' counsel's directions to refile the bill of exceptions as corrected.

The court reporter testified that the reproofread bill of exceptions was the most accurate and complete version of what took place at Kays' trial. She stated specifically that, to the best of her knowledge, the reproofread bill of exceptions showing that 12 jurors deliberated and were polled was an accurate portrayal of what happened at trial.

The court reporter explained that in preparing the original bill of exceptions, she likely had accidentally hit the wrong bank when transcribing her stenographer notes, adding an additional juror's name to the polling. The court reporter explained that she had attempted to e-mail the reproofread and corrected bill of exceptions to Kays' appellate counsel so he would not have to pay for copies, because she felt bad about the prior proofreading errors. But she stated that she "must have picked the wrong file" when she e-mailed appellate counsel.

The affidavit of the 13th juror was entered into evidence at the hearing. Her affidavit set forth that she had been impaneled as a member of the jury in Kays' case and that she sat

as a juror until the case was submitted for deliberation at the close of the evidence, at which time the judge explained that she was the alternate juror and that her service was no longer needed. Her affidavit stated that she did not deliberate in Kays' case.

The audiotape of the trial was not entered into evidence at the hearing. Neither were the court reporter's stenographer notes. Although the court reporter indicated at the hearing that these items could probably be found in the courtroom where she had worked, Kays' appellate counsel did not request them.

At the close of the evidence submitted at the § 2-105(B)(5) hearing, Kays' appellate counsel stated that he did not dispute the 13th juror's affidavit averring that she did not deliberate in Kays' trial. Rather, he argued that the entire bill of exceptions lacked credibility, based on its history of being mishandled. Kays' appellate counsel elaborated that he believed a new trial was the only remedy, especially given the fact that the trial judge had recused herself and the court reporter had resigned.

The district court disagreed and entered an order finding that the reproofread bill of exceptions prepared and filed by the court reporter constituted the correct bill of exceptions upon which Kays' appeal should proceed.

Kays thereafter filed a second amended appellate brief assigning and arguing to the Court of Appeals that the district court erred in finding that the reproofread bill of exceptions was credible and allowing that bill of exceptions to be used for this appeal. He also reassigned and argued his previously assigned errors (1) that the judge failed to discharge the alternate juror prior to submission of the case to the jury for deliberation, (2) prosecutorial misconduct, (3) insufficient evidence, (4) ineffective assistance of counsel, and (5) excessive sentences.

Kays did not argue in his brief on appeal that the cause should be remanded for another § 2-105(B)(5) hearing before the judge who had presided over his trial, nor did Kays argue that the trial judge's recusal from the § 2-105(B)(5) hearing was improper. Rather, Kays continued to argue that due to

the acts of the court reporter and the fact of the trial judge's recusal, the bill of exceptions was generally not credible and could not be remedied in a § 2-105(B)(5) hearing. As a result, Kays argued that a new trial would be warranted. However, he also argued that such a new trial would be barred by double jeopardy, "due to the prejudice suffered."[1] Kays alternatively argued that due to the irregularities caused by the court reporter and his reliance on the e-mailed version of the bill of exceptions, the e-mailed version of the bill of exceptions reflecting polling of the 13th juror should be utilized.

The Court of Appeals found no merit to Kays' assignments of error.[2] Particularly, the Court of Appeals found no error in the district court's determination that the amended bill of exceptions was credible. In so finding, the Court of Appeals noted that a "conflict of interest" could be considered a "disability" and, thus, was one of the acceptable reasons listed in § 2-105(B)(5) for allowing the hearing on a motion to amend a bill of exceptions to be held before a judge other than the judge presiding over the trial.

The dissenting opinion took issue with the majority's conclusion that the term "disability" encompassed situations where the trial judge has recused himself or herself due to a conflict of interest, especially when the record did not suggest a conflict of interest. The dissent explained that in proceedings under § 2-105(B)(5), the trial judge who presided at trial is crucial to the process, because that judge is in the best position to exercise judgment about any disputed amendments or corrections and how to most accurately complete the record of what occurred at trial.[3] The dissent wished to remand the matter for a § 2-105(B)(5) hearing before the original trial judge.

Kays petitioned for further review, which we granted. His brief in support of his petition for further review purported

---

[1] Second replacement brief for appellant at 15.

[2] *State v. Kays*, 21 Neb. App. 376, 838 N.W.2d 366 (2013), *disapproved on other grounds, State v. Filholm*, 287 Neb. 763, 838 N.W.2d 571 (2014).

[3] *Id*. (Irwin, Judge, dissenting).

to "incorporate[] by reference" the assignments of error and
arguments from his brief on appeal.[4] The only assignment of
error actually stated in his petition for further review is that the
Court of Appeals erroneously held that the term "disability" as
used in § 2-105(B)(5) encompasses a conflict of interest. He
asks for the first time in his petition for further review that we
remand the matter for a new § 2-105(B)(5) hearing before the
trial judge or demand from the trial judge a further explanation
of her stated conflict of interest.

## ASSIGNMENTS OF ERROR

Kays assigns that the Court of Appeals erroneously con-
cluded that the term "disability" in § 2-105(B)(5) encompassed
a conflict of interest.

## STANDARD OF REVIEW

[1] Appellate review is limited to those errors specifically
assigned in an appeal to the district court and again assigned as
error in an appeal to the higher appellate court.[5]

[2] Although an appellate court ordinarily considers only
those errors assigned and discussed in briefs, an appellate court
may, at its option, notice plain error.[6]

[3] Plain error exists where there is error, plainly evident
from the record but not complained of at trial, that prejudicially
affects a substantial right of a litigant and is of such a nature
that to leave it uncorrected would cause a miscarriage of jus-
tice or result in damage to the integrity, reputation, and fairness
of the judicial process.[7]

## ANALYSIS

[4] We begin by noting that there is no asserted error in this
appeal that has not been waived. Absent plain error, our review

---

[4] Brief in support of petition for further review at 4.

[5] *Miller v. Brunswick*, 253 Neb. 141, 571 N.W.2d 245 (1997).

[6] *Id*.

[7] See *In re Interest of Justine J. & Sylissa J.*, 288 Neb. 607, 849 N.W.2d 509
(2014).

on a petition for further review is restricted to matters assigned and argued in the briefs.[8]

[5] Neb. Ct. R. App. P. § 2-102(F)(3) (rev. 2012) provides that the petition for further review and supporting memorandum brief shall set forth a separate, concise statement of each error alleged to have been made by the Court of Appeals and that the memorandum brief must discuss the errors assigned. Incorporating by reference the assignments of error and arguments made in one's appellate brief is not an appropriate way to set forth separately and concisely the assignments of error in a petition for further review. Nor is mere incorporation by reference an appropriate discussion of the errors assigned as required by § 2-102(F)(3).[9]

[6,7] The only error properly assigned and argued in the petition for further review concerns the trial judge's recusal from the hearing on Kays' motion to amend the bill of exceptions. However, Kays did not object below to the trial judge's recusal. Absent plain error, an issue not raised to the district court will not be considered by an appellate court on appeal.[10] A petition for further review cannot be utilized to circumvent the general rule that an appellant may not raise issues or arguments for the first time on appeal.

[8] In fact, appellate counsel's arguments at the § 2-105(B)(5) hearing revealed a larger strategy in which Kays hoped to gain a new trial because of the trial judge's recusal. We have repeatedly said that one may not waive an error, gamble on a favorable result, and, upon obtaining an unfavorable result, assert the previously waived error.[11]

---

[8] *State v. Taylor*, 286 Neb. 966, 840 N.W.2d 526 (2013).

[9] Cf., e.g., *Baldwin v. Reese*, 541 U.S. 27, 124 S. Ct. 1347, 158 L. Ed. 2d 64 (2004); *Allegheny Power v. Federal Energy Regulatory Com'n*, 437 F.3d 1215 (D.C. Cir. 2006); *Castillo v. McFadden*, 399 F.3d 993 (9th Cir. 2005); *Toney v. Gammon*, 79 F.3d 693 (8th Cir. 1996); *Perillo v. Johnson*, 79 F.3d 441 (5th Cir. 1996); *Georgia Osteopathic Hosp. v. O'Neal*, 198 Ga. App. 770, 403 S.E.2d 235 (1991).

[10] See *State v. Robinson*, 272 Neb. 582, 724 N.W.2d 35 (2006), *abrogated on other grounds, State v. Thorpe*, 280 Neb. 11, 783 N.W.2d 749 (2010).

[11] *State v. Nadeem*, 284 Neb. 513, 822 N.W.2d 372 (2012).

Furthermore, we observe that although Kays was allowed to amend his appellate brief subsequent to the hearing on the motion to amend the bill of exceptions, Kays did not assign or argue to the Court of Appeals any error in the trial judge's recusal from the hearing. He did not question whether the trial judge had a conflict of interest or whether a conflict of interest was proper grounds for recusal from a § 2-105(B)(5) hearing. We would be hard pressed to conclude on further review that the Court of Appeals erred by failing to reverse the lower court's decision on a point not complained of.

[9] While it may be preferable for the trial judge to preside over a § 2-105(B)(5) hearing, it is not structural error for the hearing to be conducted by a judge who did not preside over the original trial. Therefore, any issue as to the trial judge's recusal from the § 2-105(B)(5) hearing has been waived.

[10] Nevertheless, the reliability of the bill of exceptions on appeal is central to the integrity, reputation, and fairness of the judicial process. Accordingly, given the history of this case, we will conduct a plain error review on the limited issue of the Court of Appeals' affirmance of the determination at the § 2-105(B)(5) hearing that the bill of exceptions properly reflected the proceedings below. Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.[12]

We find that the evidence presented at the § 2-105(B)(5) hearing was uncontroverted that the 13th juror did not deliberate in Kays' trial. In fact, Kays' appellate counsel ultimately stated at the hearing that he did not dispute the 13th juror's affidavit.

We observe that the district court's failure to specifically discharge the 13th juror on the record exacerbated the confusion caused by the court reporter's mishandling of the bill of exceptions. We therefore encourage trial courts to vigilantly make a record discharging any alternate jurors before deliberation.

---

[12] *In re Interest of Justine J. & Sylissa J., supra* note 7.

But the purpose of a § 2-105(B)(5) hearing is to resolve disputes or doubts about the accuracy of the bill of exceptions, no matter how those doubts may have come about.[13] The record from the § 2-105(B)(5) hearing does not plainly reflect any inaccuracy in the reproofread bill of exceptions insofar as it shows 12 jurors deliberated and were polled for the verdict.

Kays does not really dispute this point. Kays argues instead that the bill of exceptions is generally unreliable because of the court reporter's negligent mishandling of it. He does not point to any particulars, but argues that we cannot know what else might be inaccurate and that we must, therefore, find it wanting. We find no merit to this assertion.

The evidence presented at the § 2-105(B)(5) hearing indicated that one of the versions of the bill of exceptions that was e-mailed to Kays' counsel was the version originally filed and shredded. Kays points to nothing in this e-mailed bill of exceptions indicating that any question other than that of the 13th juror required clarification, and we find nothing plainly evident therein.

[11] Regardless, the burden of proof in a proceeding under § 2-105(B)(5) challenging the bill of exceptions is necessarily upon the party seeking the amendment.[14] The court reporter testified that the filed reproofread bill of exceptions constituted the most accurate version of what transpired at trial and was in conformity with the audiotape of the proceedings. Her negligence in shredding the original bill of exceptions and backdating the currently filed bill of exceptions does not negate her testimony as a matter of law. And Kays brought forth no evidence contradicting the court reporter's testimony. If Kays had further concerns, he was free to introduce additional evidence or call witnesses and explain how he thought the bill of exceptions required correction.

[12] Under a plain error standard of review, it is not the role of an appellate court to substitute its opinion for the opinion

---

[13] See *id*.

[14] See *Black v. Youmans*, 245 F. 460 (8th Cir. 1917).

of a district court that is reasonably supported by the record.[15] We cannot conclude from the record that the findings of the district court in the § 2-105(B)(5) hearing were so unsubstantiated that any purported errors were injurious to the integrity, reputation, or fairness of the judicial process as to justify reversal on appeal under the plain error doctrine.[16]

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the Court of Appeals.

Aꜰꜰɪʀᴍᴇᴅ.

Hᴇᴀᴠɪᴄᴀɴ, C.J., and Cᴀssᴇʟ, J., not participating.

_____

[15] *Steffy v. Steffy*, 287 Neb. 529, 843 N.W.2d 655 (2014).

[16] See *id.*

_____

Sᴛᴀᴛᴇ ᴏꜰ Nᴇʙʀᴀsᴋᴀ, ᴀᴘᴘᴇʟʟᴇᴇ, ᴠ.
Tɪʟʟᴍᴀɴ T. Hᴇɴᴅᴇʀsᴏɴ, ᴀᴘᴘᴇʟʟᴀɴᴛ.

___ N.W.2d ___

Filed October 17, 2014.    No. S-13-559.

1. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.

2. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.

3. **Rules of Evidence: Appeal and Error.** Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.

4. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.